No. 21-10550

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

JEREMY WELLS,

*Plaintiff-Appellant*,

v.

WARDEN PHILBIN, CLIFFORD BROWN, AND FNU FLUKER,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Georgia
Case No. 1:20-CV-00097
Hon. J. Randal Hall

## EN BANC BRIEF FOR *AMICI CURIAE* THE AMERICAN CIVIL LIBERTIES UNION, THE AMERICAN CIVIL LIBERTIES UNION OF ALABAMA, THE AMERICAN CIVIL LIBERTIES UNION OF FLORIDA, THE AMERICAN CIVIL LIBERTIES UNION OF GEORGIA IN SUPPORT OF PLAINTIFF-APPELLANT

Jennifer Wedekind
AMERICAN CIVIL LIBERTIES UNION
915 15th Street NW
Washington, DC 20005
(202) 548-6610
jwedekind@aclu.org

Daniel Tilley
ACLU OF FLORIDA
4343 W. Flagler Street, Suite 400
Miami, FL 33134
(786) 363-2737
DTilley@aclufl.org

LaTisha Gotell Faulks
ACLU OF ALABAMA
PO Box 6179
Montgomery, AL 36106
(334) 265-2754
tgfaulks@aclualabama.org

Andres M. Lopez-Delgado
ACLU FOUNDATION OF GEORGIA, INC.
PO Box 570738
Atlanta, GA 30357
(732) 666-3300
adelgado@acluga.org

*Counsel for* Amici Curiae

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 29(c) and 11th Cir. R. 26.1-1, the undersigned hereby certifies that the following is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal:

1.    American Civil Liberties Union

2.    American Civil Liberties Union of Alabama

3.    American Civil Liberties Union of Florida

4.    American Civil Liberties Union of Georgia

5.    Anand, Easha

6.    Brennan Center for Justice at NYU School of Law

7.    Brown, Clifford

8.    Cao, Perry

9.    Constitutional Accountability Center

10.    Dignam, Brett

11.    Dillon, Rosalind

12.    Epps, Brian K., U.S. Magistrate Judge

13.    Faulks, LaTisha G.

14.    Florida Justice Institute

15.    Fluker, FNU

16.   Gelernter, Eugene M.

17.   Hall, Randal J., U.S. District Court Chief Judge

18.   Human Rights Defense Center

19.   Legal Aid Society

20.   Lopez-Delgado, Andres M.

21.   Marion, Abigail E.

22.   Patterson Belknap Webb & Tyler LLP

23.   Philbin, Warden

24.   Quigley, William P.

25.   Rao, Devi

26.   Roderick & Solange MacArthur Justice Center

27.   Southern Center for Human Rights

28.   Southern Poverty Law Center

29.   Tilley, Daniel

30.   Wedekind, Jennifer A.

31.   Wells, Jeremy John

Pursuant to 11th Cir. R. 26.1-3, the undersigned further certifies that no publicly traded company or corporation has an interest in the outcome of the case or appeal.

Dated: June 14, 2022                          */s/ Jennifer Wedekind*
                                               Jennifer Wedekind

C-2

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... ii

INTEREST OF *AMICI CURIAE* ...............................................................1

INTRODUCTION ...................................................................................2

SUMMARY OF ARGUMENT ................................................................3

ARGUMENT ..........................................................................................4

I.    PRISON GRIEVANCE PROCEDURES ARE LITTERED WITH
      LANDMINES THAT PREVENT EXHAUSTION OF
      ADMINISTRATIVE REMEDIES. ............................................ 4

II.   MANY INCARCERATED PEOPLE FACE ADDITIONAL BARRIERS
      THAT HINDER THEIR ABILITY TO EXHAUST ADMINISTRATIVE
      REMEDIES. ................................................................................ 7

      A.    Common Characteristics Of Incarcerated People Make Completing
            Complex Grievance Procedures Particularly Onerous..........................7

      B.    Retaliation Also Prevents People From Exhausting Administrative
            Remedies. ...............................................................9

III.  PRISON ADMINISTRATORS CAN USE COMPLEX GRIEVANCE
      SYSTEMS TO IMMUNIZE THEMSELVES FROM SUIT. .......................... 10

CONCLUSION ....................................................................................12

CERTIFICATE OF COMPLIANCE.......................................................14

CERTIFICATE OF SERVICE ..............................................................15

# TABLE OF AUTHORITIES

## Cases

*Bracero v. Sec'y, Fla. Dep't of Corr.*,
   748 F. App'x 200 (11th Cir. 2018) (per curiam) (unpublished),
   *cert. denied*, 139 S. Ct. 1631 (2019)........................................................................6

*Chatman v. Johnson*,
   No. CV S-06-0578 MCE EFB P, 2007 WL 2023544 (E.D. Cal. July 11,
   2007), *report and recommendation adopted*, No. CV S-06-0578 MCE EFB P,
   2007 WL 2796575 (E.D. Cal. Sept. 25, 2007) ......................................................6

*Craft v. Middleton*,
   No. CIV-11-925-R, 2012 WL 3886378 (W.D. Okla., Aug. 20, 2012), *report
   and recommendation adopted*, No. CIV-11-925-R, 2012 WL 3872010 (W.D.
   Okla., Sept. 6, 2012) ..........................................................................................12

*Fischer v. Smith*,
   2011 WL 3876944 (E.D. Wis., Aug. 31, 2011)......................................................5

*Freeland v. Ballard*,
   No. 2:14-cv-29445, 2017 WL 337997 (S.D. W.Va. Jan. 23, 2017)......................5

*Haynes v. Ivens*,
   No. 08-cv-13091-DT, 2010 WL 420028 (E.D. Mich., Jan. 27, 2010)..................5

*Johnson v. Lozano*,
   No. 2:19-cv-1128 MCE DB P, 2021 WL 38179 (E.D. Cal. Jan. 5, 2021)............9

*Jones v. Bock*,
   549 U.S. 199 (2007)..............................................................................................12

*Keys v. Craig*,
   160 F. App'x 125 (3d Cir. 2005) ...........................................................................5

*Mack v. Klopotoski*,
   540 F. App'x 108 (3d Cir. 2013) ...........................................................................5

*Mackey v. Kemp*,
  No. CV 309-039, 2009 WL 2900036 (S.D. Ga., July 27, 2009) ........................5

*Porter v. Nussle*,
  534 U.S. 516 (2002).................................................................. 10, 11

*Richardson v. Spurlock*,
  260 F.3d 495 (5th Cir. 2001) ...............................................................5

*Rinaldi v. United States*,
  904 F.3d 257 (3d Cir. 2018) .................................................................9

*Rodriguez v. Cty. of Los Angeles*,
  891 F.3d 776 (9th Cir. 2018) ...............................................................9

*Ross v. Blake*,
  578 U.S. 632 (2016)....................................................................... 9, 11

*Simpson v. Greenwood*,
  No. 06-C-612-C, 2007 WL 5445538 (W.D. Wis., Apr. 6, 2007)........................5

*Snowden v. Prada*,
  No. CV 12-1466, 2013 WL 4804739 (C.D. Cal. Sept. 9, 2013) .......................12

*Strong v. David*,
  297 F.3d 646 (7th Cir. 2002) .............................................................11

*Tuckel v. Grover*,
  660 F.3d 1249 (10th Cir. 2011) ..........................................................9

*Turner v. Burnside*,
  541 F.3d 1077 (11th Cir. 2008) ........................................................10

*Wells v. Philbin*,
  No. 1:20-cv-00097-JRH-BKE, 2020 WL 7491360 (S.D. Ga. Dec. 18, 2020).....6

*Wells v. Warden*,
  No. 21-10550, 2021 WL 5706990 (11th Cir. Dec. 2, 2021) .............................6

*White v. Lemma*,
  947 F.3d 1373 (11th Cir. 2020) ............................................................6

*Whitener v. Buss*,
  268 F. App'x 477 (7th Cir. 2008) .........................................................5

*Woodford v. Ngo*,
  548 U.S. 81 (2006)..........................................................................3, 9

**Statutes**

42 U.S.C. § 1997e(a).................................................................. 1, 3, 4, 10

**Other Authorities**

Alison M. Mikkor, *Correcting for Bias and Blind Spots in PRLA Exhaustion
Law*, 21 GEO. MASON L. REV. 573 (2014) ...............................................5

BOBBY D. RAMPEY, *ET AL.*, U.S. DEP'T OF EDU., HIGHLIGHTS FROM THE U.S.
  PIAAC SURVEY OF INCARCERATED ADULTS: THEIR SKILLS, WORK EXPERIENCE,
  EDUCATION, AND TRAINING, at Table 1.2 (Nov. 2016),
  https://nces.ed.gov/pubs2016/2016040.pdf .........................................7

Derek Borchardt, *The Iron Curtain Redrawn Between Prisoners and the
  Constitution*, 43 COLUM. HUM. RTS. L. REV. 469 (2012) .............................. 4, 11

HUMAN RIGHTS WATCH, NO EQUAL JUSTICE: THE PRISON LITIGATION REFORM
  ACT IN THE UNITED STATES (June 2009),
  https://www.hrw.org/sites/default/files/reports/us0609web.pdf .......................11

James E. Robertson, *"One of the Dirty Secrets of American Corrections":
  Retaliation, Surplus Power, and Whistleblowing Inmates*, 42 U. MICH. J.L.
  REFORM 611 (2009)...........................................................................9

LAURA M. MARUSCHAK, *ET AL.*, BUREAU OF JUSTICE STATISTICS, DISABILITIES
  REPORTED BY PRISONERS (Mar. 2021), https://bjs.ojp.gov/content/pub/pdf/
  drpspi16st.pdf.................................................................................8

iv

LAURA M. MARUSCHAK, *ET AL.*, BUREAU OF JUSTICE STATISTICS, INDICATORS OF MENTAL HEALTH PROBLEMS REPORTED BY PRISONERS (June 2021), https://bjs.ojp.gov/sites/g/files/xyckuh236/files/media/document/imhprpspi16st.pdf ...................................................................................................8

M.C. ESCHER COLLECTION, https://mcescher.com/gallery/impossible-constructions/# (last visited June 8, 2022)............................................................2

Margo Schlanger & Giovanna Shay, *Preserving the Rule of Law in America's Jails and Prisons: The Case for Amending the Prison Litigation Reform Act*, 11 U. PA. J. CONST. L. 139 (2008), https://repository.law.umich.edu/cgi/viewcontent.cgi?article=2261&context=articles ...........................................................................4

Margo Schlanger, *Prisoners with Disabilities*, *in* 4 REFORMING CRIMINAL JUSTICE: PUNISHMENT, INCARCERATION, AND RELEASE 295, 295 (Erik Luna ed., 2017), https://law.asu.edu/sites/default/files/pdf/academy_for_justice/14_Criminal_Justice_Reform_Vol_4_Prisoners-with-Disabilities.pdf ..........................................8

National Institute of Mental Health, *Mental Illness*, Fig. 1, https://www.nimh.nih.gov/health/statistics/mental-illness#part_2539 (last visited June 8, 2022) .............................................................................................8

U.S. DEP'T OF JUSTICE, BUREAU OF JUSTICE STATISTICS, FEDERAL PRISONER STATISTICS COLLECTED UNDER THE FIRST STEP ACT, 2021 (Nov. 2021), https://bjs.ojp.gov/library/publications/federal-prisoner-statistics-collected-under-first-step-act-2021 ........................................................................7

## INTEREST OF *AMICI CURIAE*[1]

The **American Civil Liberties Union** ("ACLU") is a nationwide, nonprofit, nonpartisan organization with more than 1.7 million members dedicated to the principles of liberty and equality embodied in the Constitution and this Nation's civil rights laws. Consistent with that mission, the ACLU established the National Prison Project ("NPP") in 1972 to protect and promote incarcerated people's civil and constitutional rights. NPP has been involved in litigation concerning the interpretation of the Prison Litigation Reform Act, 42 U.S.C. § 1997e, since the statute's enactment.

The **ACLU of Georgia**, the **ACLU of Alabama**, and the **ACLU of Florida** are state affiliates of the ACLU.

---

[1] This brief has not been authored, in whole or in part, by counsel to any party in this appeal. No party or counsel to any party contributed money intended to fund preparation or submission of this brief. No person, other than the amici, their members, or their counsel, contributed money that was intended to fund preparation or submission of this brief. All parties consented to the filing of this brief.

1

**INTRODUCTION**

Prison grievance systems often contain a gauntlet of procedural minutiae, designed to intimidate the uninitiated, trip up the unwary, and foil all but the most sophisticated grievants. Indeed, in the era of the Prison Litigation Reform Act ("PLRA"), prison grievance procedures often resemble the optical illusions of M.C. Escher, with circular stairways and unreachable doors.[2]

These complex grievance procedures present significant obstacles to the courthouse doors for most incarcerated plaintiffs. And current Court precedent twice penalizes plaintiffs who are unable to navigate the thicket of procedural requirements necessary to exhaust their administrative remedies—by dismissing their case for failure to exhaust *and* by assessing them a PLRA "strike." But this Court's holding that a dismissal for failure to exhaust constitutes a strike is inconsistent with the language of the PLRA and is at odds with every other Circuit to have addressed the question. This Court should join with its sister circuits and hold that strikes should not be assessed when a case is dismissed for failure to exhaust.

---

[2] M.C. ESCHER COLLECTION, https://mcescher.com/gallery/impossible-constructions/# (last visited June 8, 2022).

## SUMMARY OF ARGUMENT

The PLRA's exhaustion provision requires incarcerated people to exhaust all available administrative remedies before bringing suit. 42 U.S.C. § 1997e(a). There is virtually no limitation on how complicated a grievance process may be, and incarcerated people must comply with every step in a grievance regime devised by the prison authorities themselves, with few exceptions, to demonstrate "proper" exhaustion. *See Woodford v. Ngo*, 548 U.S. 81, 93 (2006). But incarcerated people are often unable to successfully navigate the grievance process and are thus barred from seeking judicial redress for serious civil rights violations.

Additional barriers also hinder incarcerated people's ability to complete the grievance process. Incarcerated people have disproportionately high rates of disabilities and mental illness, and disproportionately low rates of English proficiency and literacy. Threatened or actual retaliation further prevents incarcerated people from completing the grievance process.

In many cases, the procedural barriers that prevent incarcerated people from successfully navigating the grievance process are by design. Because the responsibility for the creation and implementation of grievance requirements rests with prison administrators, those same administrators can design procedures to immunize themselves from suit.

3

This Court's treatment of incarcerated plaintiffs' inability to exhaust complicated grievance systems as PLRA "strikes" twice penalizes plaintiffs, unnecessarily, who are attempting to seek redress for serious constitutional violations. This Court now has the opportunity to correct course and hold that dismissals for failure to exhaust are not strikes under the PLRA.

## ARGUMENT

## I.    PRISON GRIEVANCE PROCEDURES ARE LITTERED WITH LANDMINES THAT PREVENT EXHAUSTION OF ADMINISTRATIVE REMEDIES.

Under the PLRA, prisoners must exhaust available administrative remedies before filing suit in federal court. 42 U.S.C. § 1997e(a). But complex grievance procedures, combined with short deadlines, present myriad potential stumbling blocks for incarcerated people that may prevent them from ever reaching the courthouse doors.

Grievance systems typically include multiple stages, which may include an informal resolution attempt, formal grievance, and one or two appeals.[3] At each stage they must meet often impossibly tight deadlines, which are frequently less than two weeks and can be as short as two to five days.[4] And any misstep during

---

[3] *See* Derek Borchardt, *The Iron Curtain Redrawn Between Prisoners and the Constitution*, 43 COLUM. HUM. RTS. L. REV. 469, 492-94 (2012).

[4] Margo Schlanger & Giovanna Shay, *Preserving the Rule of Law in America's Jails and Prisons: The Case for Amending the Prison Litigation Reform Act*, 11 U. PA. J. CONST. L. 139, 148 (2008) ("[I]f prisoners miss deadlines that are often less

the grievance process can forever foreclose plaintiffs from pursuing their civil rights claims in federal court.[5] Incarcerated people may lose their claims for including multiple issues on a single grievance.[6] Or for failing to name the individuals implicated by the grievance with sufficient specificity.[7] Even minor technical errors can prove fatal. For example, filing an "administrative" appeal rather than a "disciplinary" appeal[8] or submitting a proper grievance to the wrong official[9] can lead to dismissal for failure to exhaust. So can mailing multiple grievances in a single envelope rather than separately mailing each one;[10] failing to submit a complaint where the requisite form for doing so is unavailable;[11]

---

than fifteen days and in some jurisdictions as short as two to five days, a judge cannot consider valid claims of sexual assault, beatings, or racial or religious discrimination.") (footnote omitted).

[5] *See* Alison M. Mikkor, *Correcting for Bias and Blind Spots in PLRA Exhaustion Law*, 21 GEO. MASON L. REV. 573, 575-76 (2014).

[6] *See, e.g.*, *Simpson v. Greenwood*, No. 06-C-612-C, 2007 WL 5445538, at *2-5 (W.D. Wis. Apr. 6, 2007) (dismissing for non-exhaustion where grievance was rejected for including two issues despite acknowledging that the grievance rules "do not define what is meant by the term 'issue' and its meaning is far from self-evident").

[7] *See, e.g.*, *Whitener v. Buss*, 268 F. App'x 477, 478-79 (7th Cir. 2008) (dismissing claim of prisoner who was unable to obtain the relevant officers' names within the 48-hour grievance deadline); *Haynes v. Ivens*, No. 08-cv-13091-DT, 2010 WL 420028, *5-6 (E.D. Mich., Jan. 27, 2010) (holding grievance naming "Health Care" did not exhaust against a particular physician assistant).

[8] *Richardson v. Spurlock*, 260 F.3d 495, 499 (5th Cir. 2001).

[9] *See*, *e.g.*, *Keys v. Craig*, 160 F. App'x 125, 126 (3d Cir. 2005).

[10] *Freeland v. Ballard*, No. 2:14-cv-29445, 2017 WL 337997, at *6-7 (S.D. W.Va. Jan. 23, 2017).

[11] *See Mackey v. Kemp*, No. CV 309-039, 2009 WL 2900036, at *3 (S.D. Ga., July 27, 2009).

5

submitting handwritten copies instead of photocopies even when the photocopier is broken;[12] submitting carbon copies instead of originals;[13] submitting an appeal to the "Inmate Appeals Branch" instead of to the "appeals coordinator";[14] or writing below a form's line that instructed "do not write below this line."[15]

Classifying cases dismissed for failure to exhaust administrative remedies as PLRA "strikes," creates additional barriers for plaintiffs seeking redress from federal courts for serious constitutional violations. Incarcerated plaintiffs who proceed in good faith but are unable to successfully navigate the grievance system can quickly rack up strikes and find themselves ineligible to proceed *in forma pauperis*.

In this case, the lower court adopted the Report and Recommendation of the Magistrate Judge and held that Mr. Wells' two previous cases dismissed for failure to exhaust administrative remedies count as PLRA strikes. *Wells v. Philbin*, No. 1:20-cv-00097-JRH-BKE, 2020 WL 7491360, at *1 (S.D. Ga. Dec. 18, 2020) (quoting *White v. Lemma*, 947 F.3d 1373, 1379 (11th Cir. 2020)). The district

---

[12] *Mack v. Klopotoski*, 540 F. App'x 108, 112-13 (3d Cir. 2013).
[13] *Fischer v. Smith*, No. 10-C-870, 2011 WL 3876944, at *2 (E.D. Wis. Aug. 31, 2011).
[14] *Chatman v. Johnson*, No. CV S-06-0578 MCE EFB P, 2007 WL 2023544, at *6 (E.D. Cal. July 11, 2007), *report and recommendation adopted*, No. CV S-06-0578 MCE EFB P, 2007 WL 2796575 (E.D. Cal. Sept. 25, 2007).
[15] *Bracero v. Sec'y, Fla. Dep't of Corr.*, 748 F. App'x 200, 203 (11th Cir. 2018) (per curiam) (unpublished), *cert. denied*, 139 S. Ct. 1631 (2019).

court's opinion, affirmed by this Court, stands in stark contrast with every other circuit to have addressed the issue. *Wells v. Warden*, No. 21-10550, 2021 WL 5706990, at *2-3 (11th Cir. Dec. 2, 2021). Considering the real-world consequences of this outlier approach, one that effectively limits well-intentioned plaintiffs' access to the courts for failure to exhaust administrative remedies, this Court *en banc* should align its approach with its sister circuits and hold a dismissal based solely on the failure to exhaust does not constitute a strike under the PLRA.

## II. MANY INCARCERATED PEOPLE FACE ADDITIONAL BARRIERS THAT HINDER THEIR ABILITY TO EXHAUST ADMINISTRATIVE REMEDIES.

### A. Common Characteristics Of Incarcerated People Make Completing Complex Grievance Procedures Particularly Onerous.

The complexities of prison grievance procedures may stump even the most proficient jailhouse lawyers. And many incarcerated people face additional barriers that further frustrate their chances of successful administrative exhaustion. Incarcerated people have disproportionately low rates of educational attainment,[16]

---

[16] *See, e.g.*, U.S. DEP'T OF JUSTICE, BUREAU OF JUSTICE STATISTICS, FEDERAL PRISONER STATISTICS COLLECTED UNDER THE FIRST STEP ACT, 2021, at Table 1 (Nov. 2021), https://bjs.ojp.gov/library/publications/federal-prisoner-statistics-collected-under-first-step-act-2021 (finding that in 2020, 28.3% of federal prisoners did not have a high school diploma, general equivalency degree, or other equivalent certificate).

English proficiency,[17] and literacy.[18] Meanwhile, the prevalence of disability and mental illness among incarcerated people is disproportionately high. According to the Bureau of Justice Statistics, a staggering 38% of prisoners reported having a disability—a rate roughly two and a half times greater than adults in the general U.S. population.[19] Significantly, the most commonly reported disability was "cognitive disability."[20] Similarly, 41% of all state and federal prisoners have a history of mental health problems,[21] compared to about 21% of the general population.[22] And about 13% of state and federal prisoners reported experiencing serious psychological distress during the last month.[23] Any or all of these

---

[17] *Id.* (finding that in 2020, 11.4% of federal prisoners reported English as a second language).

[18] BOBBY D. RAMPEY, *ET AL.*, U.S. DEP'T OF EDU., HIGHLIGHTS FROM THE U.S. PIAAC SURVEY OF INCARCERATED ADULTS: THEIR SKILLS, WORK EXPERIENCE, EDUCATION, AND TRAINING, at Table 1.2 (Nov. 2016), https://nces.ed.gov/pubs2016/2016040.pdf (finding 29% of state and federal prisoners fell into the two lowest levels of a six-level literacy scale, compared to 19% of the general population).

[19] LAURA M. MARUSCHAK, *ET AL.*, BUREAU OF JUSTICE STATISTICS, DISABILITIES REPORTED BY PRISONERS, at 1-2 (Mar. 2021), https://bjs.ojp.gov/content/pub/pdf/drpspi16st.pdf.

[20] *Id.* at 1-2.

[21] LAURA M. MARUSCHAK, *ET AL.*, BUREAU OF JUSTICE STATISTICS, INDICATORS OF MENTAL HEALTH PROBLEMS REPORTED BY PRISONERS, at 1 (June 2021), https://bjs.ojp.gov/sites/g/files/xyckuh236/files/media/document/imhprpspi16st.pdf

[22] National Institute of Mental Health, *Mental Illness*, Fig. 1, https://www.nimh.nih.gov/health/statistics/mental-illness#part_2539 (last visited June 8, 2022).

[23] MARUSCHAK, INDICATORS OF MENTAL HEALTH PROBLEMS REPORTED BY PRISONERS, *supra* note 21, at 5 (Table 1). *See also* Margo Schlanger, *Prisoners with Disabilities*, *in* 4 REFORMING CRIMINAL JUSTICE: PUNISHMENT,

characteristics may make it harder for incarcerated people to successfully file and pursue a meritorious claim through the prison grievance system.

Incarcerated plaintiffs with serious mental illness or intellectual disabilities are at a particular disadvantage when attempting to fulfill the rigorous requirements of grievance procedures. These prisoners may be unable to fully comprehend and comply with the numerous and varied intricacies of the grievance procedure, such as strict timelines, proper formatting, content requirements, or one of many other potentially "bewildering features." *See Ross v. Blake*, 578 U.S. 632, 646 (2016).

## B.    Retaliation Also Prevents People From Exhausting Administrative Remedies.

Actual or threatened retaliation far too often acts as a further barrier to accessing and completing the grievance procedure.[24] In response to filing

---

INCARCERATION, AND RELEASE 295, 295 (Erik Luna ed., 2017), https://law.asu.edu/sites/default/files/pdf/academy_for_justice/14_Criminal_Justice_Reform_Vol_4_Prisoners-with-Disabilities.pdf (finding that over half of prisoners report symptoms of mental illness, chiefly mania and depression, and 15% report symptoms such as delusions or hallucinations).

[24] *Woodford*, 548 U.S. at 117-19 (Stevens, J., dissenting) (observing that prisoners with meritorious claims might choose not to file grievances out of fear of retaliation); *see also* James E. Robertson, *"One of the Dirty Secrets of American Corrections": Retaliation, Surplus Power, and Whistleblowing Inmates*, 42 U. MICH. J.L. REFORM 611, 644 (2009) ("[R]etaliation against [incarcerated people who file grievances] acquires a functional quality, to wit, the prospect of deterring the target from filing suit and deterring other inmates from filing grievances.").

grievances, incarcerated people have been beaten,[25] urinated on,[26] moved to housing units where they are assaulted by other incarcerated people,[27] and told that they would be transferred so far away as to never be able to see their family until their release from prison, among other retaliatory acts.[28] This Court has recognized that "at least some threats disrupt the operation and frustrate the purposes of the administrative remedies process enough that the PLRA's exhaustion requirement does not allow them." *Turner*, 541 F.3d at 1085.

## III.    PRISON ADMINISTRATORS CAN USE COMPLEX GRIEVANCE SYSTEMS TO IMMUNIZE THEMSELVES FROM SUIT.

Congress enacted § 1997e(a) "to reduce the quantity and improve the quality of prisoner suits." *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). To that end, prior to involving the federal courts, "Congress afforded corrections officials time and opportunity to address complaints internally . . . ." *Id.* at 525. However, prison administrators have taken what was designed as a shield against frivolous lawsuits and converted it into a sword to strike down meritorious cases. Assessing a "strike" for a plaintiff's inability to navigate intentionally complex grievance systems allows prison administrators to further immunize themselves from suit, by blocking

---

[25] *See, e.g.*, *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 793-94 (9th Cir. 2018); *Tuckel v. Grover*, 660 F.3d 1249, 1251 (10th Cir. 2011).
[26] *See Johnson v. Lozano*, No. 2:19-cv-1128 MCE DB P, 2021 WL 38179, at *3 (E.D. Cal. Jan. 5, 2021).
[27] *See, e.g.*, *Rinaldi v. United States*, 904 F.3d 257, 262 (3d Cir. 2018).
[28] *See, e.g.*, *Turner v. Burnside*, 541 F.3d 1077, 1081 (11th Cir. 2008).

current unexhausted claims and increasing the financial burden of bringing future litigation.

Prison administrators who impose needlessly complex requirements that make it impossible for incarcerated people to successfully complete the grievance process foreclose plaintiffs from vindicating their rights in federal court. With any minimum requirements for grievance systems swept away by the PLRA, it is truly a case of the fox guarding the henhouse. *See Ross*, 578 U.S. at 641 ("[D]iffer[ing] markedly from its predecessor," the PLRA removed the conditions that administrative remedies be "plain, speedy, and effective" and that they satisfy minimum standards.") (quoting *Porter*, 534 U.S. at 524).

Indeed, since the PLRA's enactment in 1996, several state corrections agencies' grievance procedures "have been updated in ways that cannot be understood as anything but attempts at blocking lawsuits."[29] For example, in Illinois, after the Seventh Circuit rejected prison officials' argument that a plaintiff's grievance was not detailed enough and noted that the grievance policy contained no specificity requirements,[30] the prison system revised the grievance policy to require "details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the

---

[29] Derek Borchardt, *The Iron Curtain Redrawn Between Prisoners and the Constitution*, 43 COLUM. HUM. RTS. L. REV. 469, 473 (2012).
[30] *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002).

subject of or who is otherwise involved in the complaint."[31] Similarly California, which previously only required incarcerated people to "describe the problem and action requested," revised its grievance protocols to require people to identify by name and title or position each staff member involved along with the dates each staff member was involved.[32] And Oklahoma added a requirement that incarcerated people must have every page of a grievance notarized.[33] Because "[i]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion[,]" *Jones v. Bock*, 549 U.S. 199, 218 (2007), prison administrators' ability to needlessly complicate grievance procedures is limited only by their own creativity.

## CONCLUSION

For the foregoing reasons, the Court should reverse the judgment of the district court.

---

[31] *See* HUMAN RIGHTS WATCH, NO EQUAL JUSTICE: THE PRISON LITIGATION REFORM ACT IN THE UNITED STATES, at 12 (June 2009), https://www.hrw.org/sites/default/files/reports/us0609web.pdf (citing ILL. ADMIN. CODE tit. 20, § 504.810(b) (2003)).

[32] *Snowden v. Prada*, No. CV 12-1466, 2013 WL 4804739, at *7 (C.D. Cal. Sept. 9, 2013) (citing *Lewis v. Mitchell*, 416 F. Supp. 2d 935, 942 (S.D. Cal. Oct. 5, 2005)) (describing changes to California regulations following a court finding that the PLRA did not dictate or require that a plaintiff identify specific parties in their grievance).

[33] *See Craft v. Middleton*, No. CIV-11-925-R, 2012 WL 3886378, at *3 (W.D. Okla., Aug. 20, 2012), *report and recommendation adopted*, No. CIV-11-925-R, 2012 WL 3872010 (W.D. Okla., Sept. 6, 2012).

Dated: June 14, 2022                    Respectfully submitted,

                                        */s/ Jennifer Wedekind*
                                        Jennifer Wedekind
                                        AMERICAN CIVIL LIBERTIES UNION
                                        915 15th Street NW
                                        Washington, DC 20005
                                        (202) 548-6610
                                        jwedekind@aclu.org

                                        *Attorney for Amici Curiae*

13

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 29(b)(4) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 3,035 words.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface with 14-point Times New Roman font.


Dated: June 14, 2022                    */s/ Jennifer Wedekind*
                                        Jennifer Wedekind

14

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date:  June 14, 2022                    */s/ Jennifer Wedekind*
                                        Jennifer Wedekind

                                        *Attorney for Amici Curiae*

15